The STATE of Utah, Plaintiff
and Respondent,

v.

Forrest G. BUEL, Defendant
and Appellant.

No. 20095.

Supreme Court of Utah.

May 17, 1985.

L.A. Dever, Vernal, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

The defendant in this case was initially charged with attempted murder and possession of a dangerous weapon by a restricted person. A jury found him guilty of the lesser included offense of aggravated assault and possession of a dangerous weapon by a restricted person, in violation of U.C.A., 1953, § 76–5–103 (1978) and U.C.A., 1953, § 76–10–503 (1978), respectively. We affirm.

On January 19, 1983, a group of people gathered at defendant's home for an impromptu party. At some point during the party, two men began wrestling with each other. They ended up in the living room, and one of the men was thrown into a bookcase. There was testimony at trial that the two men had been previously cautioned to "settle down." There was also testimony that defendant and one of the men, Barry Dunn, had been arguing earlier in the day and that defendant had suggested to Dunn that he leave. On seeing Dunn and the other man wrestling, defendant grabbed a flashlight and struck Dunn over the head with it several times. Some of the other people at the party separated defendant and Dunn. Although there is conflicting testimony as to how the fight proceeded after that point, it appears that shortly thereafter Dunn picked up a pair of scissors, went outside, and then came back into the house looking for defendant. Defendant, who had picked up a gun, was hiding in the bedroom loft. There was testimony that Dunn stated that he was "going to get" defendant. There was also testimony that defendant called to Dunn and told him to come up to the loft. There was further conflicting testimony as to whether Dunn still had the scissors when he climbed up to the loft and whether defendant saw Dunn with the scissors. As Dunn climbed the ladder to the loft, defendant shot him five times. Again, there was contradictory testimony as to whether all the shots were fired at once or whether defendant fired two shots, causing Dunn to fall to the floor, and then fired three more shots after Dunn was lying on the floor. Dunn was taken to a hospital and was released two days later.

At trial, the State presented evidence of defendant's prior conviction of robbery in the state of Washington. The evidence consisted of papers that included a cover letter from an agent of the Washington Department of Corrections, an attestation affidavit by the records custodian, a photograph of defendant, a copy of a fingerprint card, a copy of a warrant of commitment, and a copy of a judgment and sentence. Defense counsel objected to the admission of the documents on the ground that they were not properly authenticated and were therefore hearsay. The trial court ruled that the evidence was admissible.

On appeal, defendant raises three issues: sufficiency of the evidence, inadmissibility of the evidence of the prior conviction, and ineffective assistance of counsel.

Defendant first argues that the evidence of self-defense in this case was sufficient to cast a reasonable doubt on defendant's guilt and, therefore, that the jury should not have returned a verdict of guilty. Defendant points to the testimony that Dunn had a weapon in his hand, threatened "to get" defendant, kicked the bedroom door open, and had the weapon in his hand as he climbed the ladder to where defendant was hiding. There was, however, considerable evidence that contradicted defendant's claim of self-defense, including testimony that defendant had taunted Dunn to come up to the loft, testimony that indicated that Dunn had dropped the scissors before entering the bedroom, and testimony that defendant had expressed a desire to kill Dunn. The fact that there was contradictory testimony, without more, is not grounds for reversal, *State v. Watts*, Utah, 675 P.2d 566, 568 (1983). The conflicting evidence was before the jury, and it was the jury's responsibility to evaluate its significance. *State v. Wulffenstein*, Utah, 657 P.2d 289, 292 (1982), *cert. denied*, 460 U.S. 1044, 103 S.Ct. 1443, 75 L.Ed.2d 799 (1983). The standard in considering a sufficiency of the evidence claim is that we will review the evidence and all reasonable inferences in a light most favorable to the jury's verdict. Only when the evidence is so inconclusive or improbable that reasonable minds must have entertained a reasonable doubt of defendant's guilt will we reverse a jury conviction on the ground of insufficient evidence. *State v. Petree*, Utah, 659 P.2d 443, 444 (1983). It was the jury's prerogative to weigh the conflicting evidence, and we find no basis for overturning its verdict.

Defendant next argues that he was denied effective assistance of counsel. Defendant bases his argument on two grounds: his trial counsel moved to consolidate the two charges against defendant for one trial, and defense counsel did not object to the admission of the document from the state of Washington on the basis of lack of proper foundation. In relation to the latter claim, defendant asserts that there was no evidence of a chain of custody concerning the exhibit, and therefore counsel's failure to object was indicative of inadequate representation.

In *Codianna v. Morris*, Utah, 660 P.2d 1101 (1983), we said, "The burden of establishing inadequate representation is on the defendant, 'and proof of such must be a demonstrable reality and not a speculative matter.'" *Id.* at 1109 (quoting *State v. McNichol*, Utah, 554 P.2d 203, 204 (1976)). Further, "[a] lawyer's 'legitimate exercise of judgment' in the choice of trial strategy or tactics that did not produce the anticipated result does not constitute ineffective assistance of counsel." *Codianna*, 660 P.2d at 1109 (quoting *McNichol*, 554 P.2d at 205). Finally, in *Strickland v. Washington*, —— U.S. ——, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), the United States Supreme Court said, "Judicial scrutiny of defense counsel's performance must be highly deferential." Defendant has failed to establish that defense counsel's strategy in consolidating the two charges for trial was anything other than a "legitimate exercise of judgment." Admittedly, defense counsel's strategy did not produce the desired result; however, an unfavorable result is not sufficient for and does not give rise to a conclusion of ineffective assistance of counsel. Further, our review of the record indicates that an objection on chain of custody, which defendant now argues should have been made by defense counsel, was not meritorious and would have been futile. "Effective representation does not require counsel to object when doing so would be futile." *State v. Malmrose*, Utah, 649 P.2d 56, 59 (1982). Defense counsel's failure to make the objection was therefore not outside the bounds of effective advocacy. Thus, we are unconvinced that defendant has met his burden of establishing that he was denied effective assistance of counsel.

We turn now to defendant's claim that Exhibit No. 11, the documents from the state of Washington, was improperly admitted. Defendant asserts that the documents lacked proper authentication as

**704**

required by Rule 68(1), Utah R.Evid., 9B U.C.A., 1953 (1977). Defendant's argument is that this rule requires (1) an attestation of the accuracy of the copy by the officer having custody of the original, (2) a certification that such officer has the custody, and (3) that the certification be made by a judge or other court official. Rule 68(1) states in part:

> An official record or entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and in the absence of judicial knowledge or competent evidence, accompanied with a certificate that such officer has the custody. If the office in which the record is kept is within the United States ..., the certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of his office.

It appears, therefore, that a judicial certification is not always required. In this case, however, there was no "judicial knowledge" on the part of the trial court, as the record came from another state. Further, the copy of the warrant of commitment and the judgment included in Exhibit No. 11 do not contain the signature of the judge who made the Washington order. Because of these defects, it appears that Exhibit No. 11 was not properly authenticated and therefore not properly admitted. Defendant was not prejudiced, however, by the admission of the exhibit because defendant himself admitted to his prior felony conviction and incarceration on cross-examination.[1] Thus, the admission of the documents from the state of Washington evidencing defendant's prior conviction was harmless error.

The judgment of conviction is affirmed.

HALL, C.J., and HOWE and ZIMMERMAN, JJ., concur.

STEWART, J., concurs in the result.

---

1. The trial judge cautioned the jury that defendant's testimony as to his prior conviction was to be used for impeachment purposes only and that the jury was to rely on Exhibit No. 11 for evidence of defendant's prior conviction. This admonition by the trial judge, however, was improper. Rule 55, Utah R.Evid., states that "evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong ... but ... such evidence is admissible when relevant to prove some other material fact...." 9B U.C.A., 1953 (1977).